Filed 4/26/21  Roy v. Fitzgerald CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM L. ROY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JEANNE M. FITZGERALD,<br><br>    Defendant and Respondent. | G058544<br><br>(Super. Ct. No. 30-2018-00995841)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Law Offices of Shun C. Chen and Shun C. Chen for Plaintiff and Appellant.

Law Offices of Lisa R. McCall and Lisa R. McCall for Defendant and Respondent.

\*          \*          \*

William L. Roy appeals from a judgment of dismissal after the trial court granted attorney Jeanne M. Fitzgerald's motion for summary judgment on Roy's quiet title action against her. Roy's complaint arose after Fitzgerald, on behalf of her client, filed with the Orange County Recorder's office a certified copy of a spousal support modification order in favor of Roy's ex-wife, Virginia Raeanne Roy.[1] Roy regarded the filing as a slander on "any property he owns" in the county, including his Fullerton residence (the Property). In recording the order, Fitzgerald, a member of the bar, identified herself as an "Attorney at Law." Roy did not sue Fitzgerald for slander of title or any other purported wrongdoing; instead, he styled his action as a "Complaint to Quiet Title," in which he asserted that Fitzgerald "claims an interest adverse to Plaintiff [in] the Property, as the recording party of an 'Order on Order to Show Cause Re Modification' . . . ." After the parties filed their respective summary judgment moving papers, opposition, and reply, including Fitzgerald's undisputed declaration that she had no interest in the Property, the court held a hearing on the matter and then granted the motion, which Roy claims was error. Finding no error, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Raeanne and Roy divorced in December 1984; under their divorce decree, Roy was ordered to pay Raeanne spousal support in a sum that is not specified in the record. By a modification order entered in October 1993 (the 1993 support order or modification order), Roy's support obligation was reduced to $200 a month, to be paid "until the death of either party"; he was also ordered to pay Raeanne an additional $200 per month until he satisfied then-outstanding arrearages on his support obligation.

---

[1] For ease of reference, as this lawsuit is between Mr. Roy and Fitzgerald, we will refer to the former as Roy and to the now deceased Mrs. Roy by a given name, as is common in family law cases. Fitzgerald, her former attorney, uses Virginia's middle name (Raeanne) in Fitzgerald's respondent's brief, and we will do the same. We intend no familiarity or disrespect. (*Pont v. Pont* (2018) 31 Cal.App.5th 428, 431, fn. 1.)

2

In May 2014, Raeanne, acting in propria persona in family court, sought a determination of the arrearages Roy owed her. According to Raeanne's "request for order," Roy ceased making support or arrearage payments in July 1995 "and has not paid me a dime since that date." Raeanne fell ill and, while continuing to represent herself, she retained Fitzgerald to specially appear to obtain a continuance of the hearing on her motion. She also had Fitzgerald file a copy of the 1993 modification order with the Orange County Recorder's office so that it would operate as a lien on any property Roy owned. According to Raeanne, Roy owned "several pieces of property including at least 3 homes and business property."

At Raeanne's direction, and as her counsel, Fitzgerald recorded a certified copy of the 1993 "Order on Order to Show Cause for Modification of Judgment" with the Orange County Recorder's office on November 10, 2014. Because Raeanne was under medical care and therefore not living in her home, and at her request, Fitzgerald filled out the "When Recorded Mail To" field on the cover page of the recording with her name and address, specifying "Jeanne M. Fitzgerald [¶] Attorney at Law." She similarly filled out the "Recording Requested By" field on the cover page: "Jeanne M. Fitzgerald [¶] Attorney at Law." Raeanne died before the end of the month, on November 26, 2014.

Nothing in the record on appeal suggests that Raeanne's motion to determine arrearages was ever heard or resolved. In February 2018, Roy filed a "Motion for Order to Withdraw Improper Recordings" against Fitzgerald in the family court. After a hearing in April 2018, the court denied Roy's motion and advised him to seek relief in the probate proceeding related to Raeanne's estate that was pending in the Los Angeles Superior Court. There, the Roys' daughter, Margaret Meisenbach, served as the personal representative of Raeanne's estate and successor trustee of Raeanne's revocable trust, of which she was the sole beneficiary and nominee to be executor of the estate.

3

Roy elected not to go to probate court.[2]  Instead, he filed this quiet title action in civil court against Fitzgerald.  He did not name any other defendants.  In her answer, Fitzgerald denied she had "any interest or estate in the property described in the Complaint and pray[ed] that the action be dismissed as to her."  She attested in her verified answer that she did not "have any financial interest in Plaintiff's property."  She noted she "was NEVER Mrs. Roy's attorney of record."  Nothing in the record indicates Fitzgerald was owed or had filed a lien for attorney fees against Raeanne or her estate.

Fitzgerald also alleged in her answer that Roy knew Raeanne was a "required defendant" in any effort to have any cloud on his title cleared, specifically the lien based on Raeanne's recording of the 1993 support order.  Fitzgerald further alleged that Roy knew Raeanne had died, but failed to inform "this Court of a Deceased Defendant's claim against Plaintiff's property," as "required by CCP § 762.030(b)."[3]  On this point, Fitzgerald alerted the court to the May 2014 motion by Roy's "ex-wife," Raeanne, "in which she requested an Order determining the amount of spousal support arrearage owed to her by Plaintiff . . . originat[ing] from the" 1993 order.

As additional "affirmative defense[s]" or a basis of dismissal, Fitzgerald also alerted the court that Roy "failed to join the personal representative, and/or the testate and intestate successors of" Raeanne's estate and that the family court had "denied Defendant's motion [to Withdraw Improper Recordings] and advised him to file his action in the [Los Angeles] probate proceeding . . . ."  Fitzgerald again asserted as

[2]  When asked during oral argument if there was any legal reason why he could not have resolved this issue in the probate court, Roy's counsel provided none.

[3]  This and all further statutory references are to the Code of Civil Procedure. The relevant code section cited by Fitzgerald provides as to quiet title actions specifically that "[i]f a person required to be named as a defendant is dead," and the plaintiff "knows of a personal representative, the plaintiff shall join the personal representative as a defendant" (§ 762.030, subd. (a)).  The code prescribes alternative procedures if "the plaintiff knows of no personal representative" (*id*., subd. (b)).

4

grounds for dismissal that Roy "is informed and is aware of a non-party's adverse claims in conjunction with the instrument or item of evidence clouding title." She invoked the statutory prohibition stating that a quiet title judgment is nonbinding and "does not affect a claim" against property by an unjoined party if the claim "was actually known to the plaintiff" at the time the plaintiff sought to quiet title. (§ 764.045, subd. (b).)

Fitzgerald moved for summary judgment; the trial court held a hearing on the motion. At the outset of the hearing, as in its earlier tentative ruling, the court indicated its core concern, stating, "I can't quiet title against someone who is not asserting an adverse interest [in the property]. And if we need to quiet title against someone with an adverse interest, that someone seems to be the estate, not the attorney."

Roy's counsel argued that Fitzgerald was "the holder of the lien and she controls the lien regardless [of] whether she claims she has any interest in [it]." He analogized Fitzgerald to a doorman "holding a key" and stating, "You cannot go in because I'm holding the key. I don't have any interest [in] the property inside but I'm holding the key. The same thing here. She has control." Roy sought to have Fitzgerald withdraw the lien or "assign" it to Raeanne's estate.

In response, counsel for Fitzgerald rejected the doorman analogy, stating that, "hav[ing] no interest in" the lien or Roy's property, "my client can't withdraw anything." She explained that Fitzgerald "recorded with the authority of her client a document. We attorneys record documents all the time. Subsequent attorneys or nonattorneys can record documents that withdraw those previous recordings. The recording party has no authority whatsoever: not under a support order [and] certainly not under this support order which identifies the party that holds the judgment creditor position, which is Mr. Roy's ex-wife."

Observing that Fitzgerald had attested "under oath, in repeated occasions before this court [that] she does not have any interest" in the property, defense counsel argued that the summary judgment motion presented "one simple question: Is there any

5

evidence to the contrary?  And there is none."  The trial court agreed:  "I can't find that there's a triable issue on any material fact about granting him the relief he seeks from this court that he's pleaded in the complaint."

In a subsequent minute order, the court added further detail:  "plaintiff provided [no] authority suggesting an attorney who records a judgment or lien for a client is somehow personally asserting an adverse claim."  The court continued:  "Whether defendant's client actually authorized her to record the order is an issue between them. [Plaintiff] has no dog in that fight.  If his ex-wife's estate doesn't want the order to be recorded, the estate can fix it.  [¶]  But if the estate wants the order [to remain] recorded, then plaintiff's concerns with an improper recording, an invalid order, or a satisfied judgment are properly addressed to the estate—not to the ex-wife's former lawyer."

The court also overruled Roy's objections to Fitzgerald's declaration and sustained Fitzgerald's objections to portions of declarations by Roy's attorney and his expert witness, including legal opinions expressed by the expert regarding recording issues.  Following the trial court's entry of dismissal, Roy appeals.

## DISCUSSION

Roy bases his appeal on his premise that "[t]here is no dispute the Lien slanders the title of [his] real property located in Orange County."  Based on this assumption, he contends there are five issues on appeal.  He identifies those issues as: "1. Whether Fitzgerald properly recorded the Lien?  [¶]  2. Whether Fitzgerald had [the] right to retain the Lien after Raeanne was deceased?  [¶]  3. Whether Fitzgerald's declaration disclaiming interest in the Lien [was] tantamount to withdrawal of the Lien? [¶]  4. Whether the estate of Raeanne proved Roy owed any support payment over five years after the Lien was recorded?  [¶]  5. Whether expunging the decoupled Lien will harm the estate of Raeanne?"  We address these issues, some of which we find difficult to decipher, only insofar as they are relevant to our summary judgment review.

6

Implicit in Roy's characterization of the issues is his contention that, by recording the 1993 support order in Raeanne's favor, and under which she claimed Roy owed her arrearages, the lien established by the recorded support obligation was Fitzgerald's to maintain or withdraw. In effect, he argues that *Fitzgerald*'s lien slandered his title to property in Orange County.

As a preliminary matter, we observe that slander of title and quieting title are separate causes of action. "The elements of a cause of action for slander of title are '(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.'" (*Alpha & Omega Development, LP v. Whillock Contracting, Inc*. (2011) 200 Cal.App.4th 656, 664, italics omitted.)

In contrast, in order to quiet title, a plaintiff's complaint "must include" all of the following as elements of his or her claim: (1) a description of the property that is the subject of the action; (2) the title of the plaintiff as to which a determination is sought and the basis of the title; (3) "*[t]he adverse claims to the title* of the plaintiff against which a determination is sought"; (4) the date as of which the determination is sought; and (5) a prayer for the determination of plaintiff's title "*against the adverse claims*." (§ 761.020, subds. (a)-(e), italics added.)

With this distinction in mind, we turn to the propriety of the trial court's summary judgment ruling.

"A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. [Citation.] The defendant can meet that burden by . . . showing the plaintiff cannot establish one or more elements of his or her cause of action . . . . [¶] Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts." (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.) To meet its initial burden, a defendant "'need address only the issues raised by the complaint.'" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

7

We review a grant of summary judgment de novo.  (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.)  We will affirm the summary judgment ruling if it is correct based on the grounds asserted in the motion.  (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 747-748.)  "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's] brief."  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

Here, Roy contends summary judgment was improper because "Material Fact Exists [*sic*] Concerning Fitzgerald's Claim of No Interest in the Lien." (Capitalization and formatting adjusted.)  Roy contends those material facts regarding Fitzgerald's personal interest include that she "recorded the Lien in her name, and her name only," and that she "absolutely refused to assign the Lien to Raeanne's estate, and/or to interplead [it] with the probate court . . . ."  Roy provides no authority for his novel argument.  More to the point, Fitzgerald could not assign any interest in the lien to anyone unless she first had an interest to assign.

Roy asserts the lien must be viewed as Fitzgerald's because it, he claims, is "in her name, and her name only."  As observed by the trial court, Roy cites no authority that "an attorney who records a judgment or lien for a client is somehow personally asserting an adverse claim."  The fact that Fitzgerald twice identified herself as "Attorney at Law" on the recording documentation belies Roy's assertion that the lien was hers. Instead, it confirms her role was in a representative capacity.

On appeal, Roy contends—again without citation to authority—that "the recording person must be legally connected to the recorded order or judgment."  Even assuming arguendo that a connection of some kind is necessary, Fitzgerald provided it with her "Attorney at Law" designation.  She attested in her verified answer that Raeanne retained her for this purpose, namely, to record the 1993 support order.  In any event, like the trial court, we agree that any potential agency issue or defect in Fitzgerald filing the order on Raeanne's behalf would be "between them."

8

Roy argues that "[i]f a third party records a judgment lien [on behalf of another], that person has no power to extinguish the lien," citing section 697.400 for the proposition that "only [a] 'judgment creditor, judgment debtor, or owner of real property subject to a judgment lien' can file an acknowledgment of satisfaction of judgment." (Similarly citing § 724.060, subd. (c).) Roy therefore reasons that the recording person or entity and the judgment creditor identified in the underlying order or judgment must be one and the same. Otherwise, he claims, "a lien created, without the legal authority to extinguish it, is illegal per se."

Roy's argument is not altogether clear to us, but there is no logical reason that the person or entity on whose behalf the lien is created by recording a judgment or order may not dissolve it. Roy's challenge has no merit.

At bottom, "[a] triable issue of material fact exists '"if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."'" (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 631.) Here, where Fitzgerald identified herself in recording the 1993 support order solely in a representative capacity, she was not mentioned anywhere in that order in any capacity, let alone as the party in whose favor the order was entered, and where Fitzgerald disclaimed under oath in the quiet title action *any* interest in the recorded order, there is no basis on which a trier of fact could reasonably conclude she had an interest in the lien or underlying order to relinquish.

An adverse interest in the property for which the plaintiff seeks to quiet title is a necessary element to maintain the action. (§ 761.020.) Because there was no evidence to indicate Fitzgerald had such an interest, the trial court correctly determined that she was entitled to summary judgment.[4]

---

[4] Roy challenges the legal propriety of the *manner* in which Fitzgerald recorded the 1993 support order, even if it was on Raeanne's behalf. He claims that an

9

Roy also contends summary judgment was improper because "Material Facts Exist that Fitzgerald Slanders [*sic*] Roy's Property." (Capitalization and formatting adjusted.) As noted, however, Roy did not assert a slander of title cause of action in his complaint. His contentions on that score are therefore immaterial to summary judgment.

Roy also suggests summary judgment was improper because Fitzgerald "Skillfully Evaded [the] Family Court's Jurisdiction." In the same part of his brief, he contends his remedy cannot be in probate court, as the family court and trial court here suggested, because Fitzgerald "Can Deploy the Same Defense in Probate Court." (Capitalization and formatting adjusted as to both headings.)

Roy's point seems to be that he believes the family court recommended he take his claim to probate court for "lack of jurisdiction over Fitzgerald" and that, similarly in his view, the probate court will also decline to hear the case because "Fitzgerald does not represent anyone in the estate," "She is not a party to the Probate Case," and "Fitzgerald refused to assign the Lien to the estate of Raeanne." These arguments are essentially restatements of Roy's claim that the lien and underlying adverse interest that it represented belonged to Fitzgerald. And therefore Fitzgerald had to assign the interest to Raeanne's estate for it to be addressed in the probate court. As discussed, there is no merit to the contention that Fitzgerald held such an interest in the property. The trial court therefore properly granted Fitzgerald summary judgment.

---

abstract of the underlying support order or judgment must be recorded, not the order or judgment itself. Of course, Roy may not raise this challenge where he has not joined the party on whose behalf the order was recorded. (§ 389 [joinder of necessary parties].) Raeanne's estate holds the requisite interest in whether the recording was properly filed, not Fitzgerald. We note merely that a "judgment lien on real property" may be "created . . . by recording an abstract . . . *or* certified copy of" an order for "child, family, or spousal support payable in installments." (§ 697.320, subd. (a) & (a)(1), italics added.) We do not decide the issue as it is not properly before us, but Roy does not dispute that Fitzgerald recorded a certified copy of the 1993 support order.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

11